UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

_____
SEATTLE TIMES COMPANY,            )   No. C13-1463RSL
                                  )
            Plaintiffs,           )
      v.                          )   ORDER GRANTING IN PART
                                  )   NATIONAL SURETY'S MOTION
NATIONAL SURETY CORP., *et al.*,  )   FOR SUMMARY JUDGMENT
                                  )
            Defendants.           )
_____)

This matter comes before the Court on "Defendant National Surety Corporation's Motion for Summary Judgment Dismissal Without Prejudice." Dkt. # 60. National Surety issued an excess insurance policy to Seattle Times Company for the policy period May 1, 1985 - May 1, 1986. The underlying policies were issued by Travelers and provided $10.5 million in coverage.[1] The Times filed this lawsuit, seeking declaratory relief establishing its rights and duties with respect to a number of insurance policies, including the one issued by National Surety, and alleging that its insurers breached the insurance agreements when they refused to provide coverage. National Surety has moved for summary judgment on the ground that, because the

---

[1] In its motion, National Surety was willing to assume that vertical exhaustion applies, such that the Times must exhaust only the policies directly below the National Surety policy to trigger coverage. Dkt. # 60 at 13-14. It is bound by this assumption and may not rely on a theory of horizontal exhaustion in its reply memorandum.

ORDER GRANTING IN PART
NATIONAL SURETY'S MOTION
FOR SUMMARY JUDGMENT

Times has not exhausted the underlying insurance policy limits, neither claim is ripe for adjudication.

Summary judgment is appropriate when, viewing the facts in the light most favorable to the nonmoving party, there is no genuine issue of material fact that would preclude the entry of judgment as a matter of law. The party seeking summary dismissal of the case "bears the initial responsibility of informing the district court of the basis for its motion" (Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986)) and "citing to particular parts of materials in the record" that show the absence of a genuine issue of material fact (Fed. R. Civ. P. 56(c)). Once the moving party has satisfied its burden, it is entitled to summary judgment if the non-moving party fails to designate "specific facts showing that there is a genuine issue for trial." Celotex Corp., 477 U.S. at 324. The Court will "view the evidence in the light most favorable to the nonmoving party . . . and draw all reasonable inferences in that party's favor." Krechman v. County of Riverside, 723 F.3d 1104, 1109 (9th Cir. 2013). Although the Court must reserve for the jury genuine issues regarding credibility, the weight of the evidence, and legitimate inferences, the "mere existence of a scintilla of evidence in support of the non-moving party's position will be insufficient" to avoid judgment. City of Pomona v. SQM N. Am. Corp., 750 F.3d 1036, 1049 (9th Cir. 2014); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 252 (1986). Factual disputes whose resolution would not affect the outcome of the suit are irrelevant to the consideration of a motion for summary judgment. S. Cal. Darts Ass'n v. Zaffina, 762 F.3d 921, 925 (9th Cir. 2014). In other words, summary judgment should be granted where the nonmoving party fails to offer evidence from which a reasonable jury could return a verdict in its favor. FreecycleSunnyvale v. Freecycle Network, 626 F.3d 509, 514 (9th Cir. 2010).

Having reviewed the memoranda, declarations, and exhibits submitted by the parties,[2] the Court finds as follows:

The Times is the former owner of a property at which environmental contamination has been found. As such it was exposed to statutory liability for remediation expenses under the Model Toxics Control Act ("MTCA") and the Comprehensive Environmental Response, Compensation, and Liability Act ("CERCLA"). For purposes of this motion, National Surety is willing to assume that the Times has already spent and/or received demands for approximately $9.1 million in cleanup costs. At this point, active remediation of the property itself is essentially complete: the soils beneath the property contain concentrations of contaminants below remediation levels, a groundwater injection system has been installed, and a groundwater monitoring program is in place. The results of the monitoring program will inform future steps at the site, with additional groundwater injections and indoor air quality sampling possible. In addition, the Washington Department of Ecology ("DOE") has required that the nature and extent to which contamination has migrated outside the boundaries of the property must be fully characterized. Sampling and observation has shown that there has been an impact on soil and groundwater beneath adjoining rights-of-way. Additional groundwater monitoring wells must be installed, and DOE may request additional soil investigation as part of the characterization efforts.

Once the extent of the off-site problem is known, DOE will determine what additional remedial measures, if any, are necessary. A geologist who has consulted on the project, Pete Kingston, acknowledges that it is possible that DOE will be satisfied and will order no further remediation, but says that outcome is "doubtful." Dkt. # 66-14 at 5. The Times' expert, J. Riley

---

[2] This matter can be determined on the papers submitted. The parties' requests for oral argument are DENIED.

ORDER GRANTING IN PART
NATIONAL SURETY'S MOTION
FOR SUMMARY JUDGMENT               -3-

Conkin, has managed the cleanup of more than 100 contaminated properties in Washington State and reports that hazardous substances from the historical dry cleaning operations on the property have come to be located in the public right-of-ways to the south and west at concentrations above the applicable cleanup levels. Based on a conceptual model of the property, the geology and hydrogeology of the site, and the observed distribution of various pollutants, Mr. Conkin believes the future remedial action costs at the site will exceed $4.75 million. The future costs are, of course, estimates given that the groundwater monitoring program and off-site characterization efforts are on-going and will ultimately determine what additional steps are necessary.

**A. Breach of Contract**

Liability typically attaches under excess policies "only after the primary coverage is exhausted." Diaz v. Nat'l Car Rental Sys., Inc., 143 Wn.2d 57, 63 (2001). National Surety argues that the Times' breach of contract claim must be dismissed because, until the underlying policies are exhausted, its duty to indemnify has not yet been triggered and, accordingly, cannot be breached. At the moment, the primary insurer has denied coverage (and has therefore not paid anything) and the Times' losses have not yet reached the combined underlying policy limits of $10.5 million.

The Times has not pled exhaustion, offers no evidence that the primary limits have been reached, and instead argues that National Surety's refusal to acknowledge its duty to pay when the underlying policy limits are reached is an anticipatory breach. The Times does not, however, point to a distinct and unequivocal statement that National Surety intends not to perform under the contract when and if its performance becomes due. Wallace v. Kuehner, 111 Wn. App. 809, 816 (2002). Rather, National Surety states that it does not have sufficient information to evaluate the liability of the other insurers, denies that there is an actual and justiciable controversy between the parties, asserts that it has no current obligation to indemnify, and raises defenses to

plaintiff's claims. Absent a clear articulation of National Surety's intent to deny coverage even if the underlying limits are reached, there is no anticipatory breach. Because the undisputed facts show that there is no present duty to indemnify, plaintiff's breach of contract claim against National Surety is not ripe and will be dismissed without prejudice.

**B. Declaratory Judgment**

The Times also seeks declaratory judgment regarding National Surety's duty to indemnify it if its costs at the property exceed the underlying policy limits. This claim is governed by the Declaratory Judgment Act, which vests federal courts with the discretion to issue declaratory judgments. 28 U.S.C. § 2201(a). National Surety argues that this request is not ripe because it relies on speculative assessments of future costs. Both parties argue that considerations of fairness and judicial economy support their positions.

"The 'basic rationale' of the ripeness requirement is 'to prevent the courts, through avoidance of premature adjudication, from entangling themselves in abstract disagreements.'" Portman v. County of Santa Clara, 995 F.2d 898, 902 (9th Cir. 1993) (quoting Abbott Labs. v. Gardner, 387 U.S. 136, 149 (1967)). A court must consider both constitutional and prudential issues when determining whether a claim is ripe. "The constitutional component focuses on whether there is sufficient injury, and thus is closely tied to the standing requirement; the prudential component, on the other hand, focuses on whether there is an adequate record upon which to base effective review." Portman, 995 F.2d at 902-03.

Actions for declaratory judgment in the insurance context frequently involve contingencies – such as whether the insured will be found liable in the underlying tort action or the size of the potential damage award. Courts nevertheless exercise their discretion to hear such disputes given the concreteness of the issues raised and the unequivocal nature of the dispute between the parties. In fact, "litigation over insurance coverage has become the paradigm for asserting jurisdiction despite future contingencies that will determine whether a controversy ever

actually becomes real." Assoc. Indem. Corp. v. Fairchild Indus., Inc., 961 F.2d 32, 35 (2nd Cir. 1992). In determining whether the contingencies are so great that they preclude the existence of an actual case and controversy between the parties, courts must attempt to balance two competing interests, namely (1) the Declaratory Judgment Act's purpose of enabling the early and comprehensive resolution of disputes and (2) considerations of judicial economy and restraint. Hoechst Celanese Corp. v. Nat'l Union Fire Ins. Co. of Pittsburgh, 623 A.2d 1133, 1137 (Sup. Ct. Del. 1992). Although there is no hard and fast rule, courts generally find that a claim against an excess insurer is ripe for adjudication if there is a substantial, reasonable, and/or practical likelihood that the dispute will trigger the excess policies. Warren v. Am. Bankers Ins., 507 F.3d 1239, 1241 (10th Cir. 2007); E.R. Squibb & Sons, Inc. v. Lloyd's & Cos., 241 F.3d 154, 177-78 (2nd Cir. 2001); Century Indem. Co. v. Marine Group, LLC, 848 F. Supp.2d 1229, 1237 (D. Or. 2012); Ross Dev. Corp. v. Fireman's Fund Ins. Co., 809 F. Supp.2d 449, 461-62 (D.S.C. 2011); Tocci Bldg. Corp. of N.J. v. Va. Sur. Co., 750 F. Supp.2d 316, 321-22 (D. Mass. 2010).

Here, it is undisputed that the primary policies underlying the excess policy issued by National Surety have not yet been exhausted. The Court's task, therefore, is to ascertain whether the likelihood that the excess policies will be triggered is sufficient to confer jurisdiction with respect to this request for declaratory judgment. The Times has already spent or received demands for $9.1 million in remediation costs associated with the insured property. Two geologists who are familiar with the site and the cleanup efforts anticipate that more on-site work will be required as the monitoring data comes in. The estimates for that work range from $700,000 to more than $1 million. Dkt. # 66-14 at 4; Dkt. # 65 at ¶ 10. The Department of DOE is requiring additional work to characterize the off-site impacts of the contamination, at an estimated cost of $375,000 to more than $500,000. Dkt. # 66-14 at 5; Dkt. # 65 at ¶ 11. In light of the known migration of contaminants to third-party property and the proposed development

plans in the area, Mr. Conkin opines that there is a substantial likelihood that DOE will require active remediation to address off-site soil and groundwater contamination and that those efforts will cost approximately $2 million.[3] The experts acknowledge that there is a possibility that DOE will not require more work and/or will choose the least expensive remedial options available, such as natural attenuation and monitoring, but based on the specific characteristics of this site and DOE's recent enforcement actions, they are not hopeful that that will be the case. At a minimum, then, the Times is expected to incur an additional $1.075 million to satisfy DOE's current demands: that number could be as high as $1.5 million. In addition, if any off-site contamination must be remediated, the costs will increase by additional millions. The Court finds a substantial likelihood that National Surety's policy will be triggered.

The Court has also considered whether the exercise of jurisdiction under the Declaratory Judgment Act promotes judicial economy and the just, speedy, and comprehensive resolution of this dispute. The inclusion and retention of National Surety as a party is both efficient and fair. By participating in this litigation, National Surety will have a say in the interpretation and application of the underlying policy language, such that it can be bound going forward. In light of the substantial likelihood that National Surety's policy will be triggered, its dismissal at this point would place it at risk of having binding precedent established in its absence or would force the Times to litigate (and the Court to hear) the same issues all over again once the remediation costs exceed $10.5 million. Given the existence of an actual case and controversy (as discussed above), National Surety's continued participation and concomitant ability to protect its interests is not unfair compared to the likely unfairness and inefficiencies that would arise if it were dismissed. For these reasons, the court elects to exercise its discretion to entertain declaratory relief.

---

[3] National Surety's objections to the admissibility of Mr. Conkin's testimony are overruled.

ORDER GRANTING IN PART
NATIONAL SURETY'S MOTION
FOR SUMMARY JUDGMENT                -7-

1  For all of the foregoing reasons, National Surety's motion for summary judgment (Dkt.
2  # 60) is GRANTED in part and DENIED in part. The Times' breach of contract claim against
3  National Surety is hereby DISMISSED without prejudice. The declaratory judgment action shall
4  proceed to trial.

6  Dated this 27th day of May, 2016.

   *Robert S. Lasnik*
8  Robert S. Lasnik
   United States District Judge

26 ORDER GRANTING IN PART
   NATIONAL SURETY'S MOTION
   FOR SUMMARY JUDGMENT           -8-